IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KIMBERLY ANN STEWART,<br><br>                   Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>the Social Security Administration,<br><br>                   Defendant. | CV 19-60-BLG-TJC<br><br>**ORDER** |

Plaintiff Kimberly Ann Stewart ("Plaintiff") has filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383f. (Doc. 2.) The Commissioner has filed the Administrative Record ("A.R."). (Doc. 9).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of

disability benefits, or alternatively for further administrative proceedings.  (Doc. 11.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 12, 13.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **AFFIRMED**.

## I.    PROCEDURAL BACKGROUND

This matter is before the Court for a second time.  Plaintiff previously appealed the denial of her request for benefits to this Court on November 10, 2016. *See Stewart v. Berryhill*, CV 16-160-TJC, Docket No. 2 (D. Mont. Nov. 10, 2016); A.R. 675-78.  In the prior case, the Court determined Administrative Law Judge Michele M. Kelley (the "ALJ") erred in weighing Plaintiff's credibility, failed to adequately consider the opinions of Dale Peterson, M.D. and Gloria Weiss, LCPC, and failed to consider the effect of Plaintiff's mental impairments in the RFC or explain why she excluded them.  (A.R. 693-740.)  The Court, therefore, reversed the Commissioner's decision and remanded the matter for further proceedings.  *Id.*

On remand, the ALJ held a second hearing on January 8, 2019.  (A.R. 567-630.)  On February 4, 2019, the ALJ issued a written decision again finding Plaintiff not disabled.  (A.R. 534-553.)  Thereafter, Plaintiff filed the instant action. (Doc. 2.)

Plaintiff argues the ALJ ignored this Court's remand order and again committed reversible error by (1) improperly discrediting her testimony; (2) failing to properly evaluate the medical opinion evidence; (3) failing to incorporate the limitations of depression as an impairment in the RFC; and (4) failing to incorporate all of her impairments into the vocational expert's hypothetical questioning.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake*

*v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

In addition, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989). Given the nature of the current review, it is also important to note that the "the law of the case doctrine and rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case." *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016). *See also Nolte v. Astrue*, 2012 WL 4466558, *2 (D. Ariz. Sept. 27, 2012) ("Courts reviewing Social Security cases after a limited remand have refused to re-examine issues settled by a district court's prior order.").

**B.    Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C.

§§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   THE ALJ'S FINDINGS ON REMAND

The ALJ noted that Plaintiff was granted disability benefits as of June 1, 2017.  (A.R. 534.)  Accordingly, on remand the ALJ's determination was limited to the time period from June 1, 2010 to June 1, 2017.  (A.R. 534.)  The ALJ acknowledged this Court's remand order, and proceeded to follow the five-step sequential evaluation process in re-considering Plaintiff's claim.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2010.  (A.R. 537.)  Second, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the spine, osteoarthritis of the right sacroiliac joint and hip, trochanteric bursitis, and osteoarthritis of the bilateral knees (status post total knee arthroplasty of the right knee)."  (*Id.*)  The ALJ also noted that Plaintiff had the medically determinable mental impairments of depressive disorder and anxiety disorder, but found they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and were, therefore, non-severe.  (*Id.*)

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the

impairments in the Listing of Impairments.  (A.R. 539.)  Fourth, the ALJ stated

Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),
> as follows: lift, carry, push and pull up to 10 pounds frequently and up
> to 20 pounds occasionally; stand and/or walk about six hours in an
> eight-hour workday; frequently climb ramps and stairs, but only
> occasionally climb ladders, ropes or scaffolds; frequently balance;
> occasionally stoop, kneel, crouch, and crawl; avoid concentrated
> exposure to extreme cold and workplace hazards such as slippery or
> uneven surfaces, dangerous machinery, and unprotected heights; and
> avoid concentrated exposure to noise levels greater than 3/5, as
> defined in the Dictionary of Occupational Titles and its companion
> publication, Selected Characteristics of Occupations.  The claimant
> was able to understand, remember, and carry out simple, detailed and
> complex tasks.  She was able to maintain attention, concentration,
> persistence, and pace for such tasks during eight-hour workdays and
> 40-hour workweeks.  The claimant was also able to tolerate
> interactions with supervisors, coworkers, and members of the public.
> Finally, the claimant was able to tolerate usual work situations and
> changes in routine work settings.

(A.R. 539.)

The ALJ next found that from June 1, 2010 through May 31, 2017, Plaintiff

was able to perform her past work as an office manager, ranch and farm real estate

agent, engineering clerk, and transcription supervisor.  (A.R. 550.)  The ALJ

alternatively found Plaintiff could perform the requirements of representative

occupations such as personnel scheduler, timekeeper, and clerical order clerk.

(A.R. 552.)  Thus, the ALJ found that Plaintiff was not disabled from June 1, 2010 through May 31, 2017.  (*Id.*)

## IV.   DISCUSSION

### A.   The ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination on remand was erroneous because the ALJ still failed to provide clear and convincing reasons for rejecting her testimony.  The Commissioner counters that the ALJ reasonably evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Commissioner of Soc.*

*Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "General findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints."  *Reddick v. Chater*, 157 F.3d at

722 (quoting *Lester*, 81 F.3d at 834)).  *See also Brown-Hunter v. Colvin*, 806 F.3d

487, 494 (9th Cir. 2015).  The clear and convincing standard "is not an easy

requirement to meet: '[It] is the most demanding required in Social Security

cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

     To assess a claimant's credibility, the ALJ may consider (1) ordinary

credibility techniques, (2) unexplained or inadequately explained failure to seek or

follow treatment or to follow a prescribed course of treatment, and (3) the

claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996);

*Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  An ALJ may also take the

lack of objective medical evidence into consideration when assessing credibility.

*Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

However, the ALJ may not reject the claimant's statements about the intensity and

persistence of their pain or other symptoms "solely because the available objective

medical evidence does not substantiate [the claimant's] statements."  20 C.F.R. §

404.1529(c)(2).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that Plaintiff is malingering.  Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms.  The Court finds the ALJ did so on remand.

First, the ALJ found Plaintiff provided conflicting reports regarding her activities of daily living.  (A.R. 540.)  The ALJ noted, for example, that in an Adult Function Report, Plaintiff asserted she had significant difficulty with personal care, could not prepare meals, do household chores, or drive.  (*Id.*)  Two months later, however, Plaintiff reported to a consultative examiner that she could handle personal care with only some assistance from her husband, use a phone and computer, buy her own clothes, shop for groceries, prepare simple meals, drive, maintain a residence, do laundry, and manage her medical care.  (*Id.*)  The ALJ's observation is supported by the evidence in the record (*compare* A.R. 240-47 *with* A.R. 462), and is a legitimate reason for discounting a claimant's testimony.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating an ALJ may discount a claimant's subjective complaints when they are inconsistent with the claimant's activities).

11

Plaintiff argues, however, the ALJ incorrectly attributed the Function Report to her.  She asserts the Function Report was completed by her husband, and therefore the ALJ's finding is factually incorrect.  It appears Plaintiff's husband completed the Function Report.  (A.R. 247.)  Yet, several questions were answered in the first person, indicating Plaintiff provided the information.  (*See* A.R. 244 ("Sometimes e-mail friends & family if daughter comes to visit [because] she types *for me*.") ("If go to Dr., husband takes me."); 245 ("Pain . . . *make[s] me* irritable, frustrated a lot [because] can't do anything."); 246 ("Don't work now, but *when I did*, prior to health issues, was respected & got along fine w[ith] all."); 246 ("Over last couple (4) years & thr[ough]-out *my life* due [to] surgeries (multiple).") (emphasis added).)  Thus, it appears Plaintiff was the source of the information in the Function Report.  Moreover, Plaintiff does not make any argument that the form was submitted without her knowledge and approval, or that she disagreed with any of the statements made therein.  As such, the Court finds no error with regard to the ALJ's consideration of the Function Report.

With regard to her physical limitations, the ALJ noted that Plaintiff reported being able to exercise a "fair amount" in March 2014.  (A.R. 544.)  The ALJ found Plaintiff's capacity for exercise contradicted her testimony and reports that she was

severely physically limited.  (*Id.*)  The ALJ's observation is supported in the record (A.R. 439), and is a permissible basis for discounting her testimony.  *Rollins*, 261 F.3d at 857.

Next, the ALJ noted that Plaintiff reported to a counselor in August 2013 that she was unemployed because of medical problems and "taking care of family members."  (AR 447.)  She also reported to her dermatologist that she was acting as a "caregiver" for employment.  (A.R. 459.)  At the second hearing, however, Plaintiff clarified that she was only coordinating the care of her in-laws at that time.  (A.R. 599-601.)  In either event, the ALJ found her statements to be inconsistent.  The ALJ determined that the "contemporaneous reports are either inconsistent with her testimony that she was so physically compromised that she could not physically care for family or that she was so mentally compromised that she could not provide [c]are or coordinate care of family members."  (AR 545.) The ALJ's conclusion is supported by the evidence in the record, including Plaintiff's own testimony.  As such, the Court must defer to the ALJ's interpretation of the evidence.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The ALJ further found Plaintiff's failure to follow treatment advice cast doubt on the alleged intensity and persistence of her subjective complaints.  (A.R. 548.)  Specifically, the ALJ noted that Plaintiff was prevented from undergoing a lumbar fusion for over two years because she continued to smoke cigarettes and medical marijuana.  (*Id.*)  The ALJ's observation is supported by the record.  In August 2015, Dr. McDowell stated Plaintiff might benefit from a lumbar fusion, but he would not do the surgery unless she stopped smoking.  (A.R. 904.)  The medical records show that Plaintiff continued to smoke until August 2017.  (A.R. 908-15.)  Plaintiff underwent surgery shortly thereafter.  (A.R. 918-19.)  The ALJ may properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment'" in assessing a claimant's credibility.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

With respect to this issue, however, Plaintiff asserts the ALJ failed to consider whether she had the ability to afford the recommended medical care.  Although the ALJ did not discuss Plaintiff's ability to pay for surgery, any error is harmless because the record shows it was Plaintiff's failure to follow medical advice that prevented her from having surgery, not an inability to pay for the services.  In September 2016, Plaintiff reported she had obtained new insurance

and was leaning towards having the surgery done.  (A.R. 908.)  But Plaintiff was continuing to smoke at that time.  (*Id.*)  Dr. McDowell, therefore, stated he would not proceed until Plaintiff quit using tobacco and medical marijuana.  (A.R. 909.)  Plaintiff did not quit smoking for another year.  (A.R. 910-12.)  Accordingly, the ALJ's determination that Plaintiff's failure to follow proscribed treatment was inconsistent with her subjective complaints is support by the evidence in the record.

The Court therefore finds the ALJ's credibility determination on remand is properly supported by specific, clear and convincing reasons.

### B.     The ALJ's Evaluation of the Medical Source Opinions

Plaintiff contends that on remand, the ALJ failed to give proper weight to the opinions of Dr. Dale Peterson, Gloria Weiss, and Dr. Tristan Sophia.  The Commissioner counters that the ALJ properly re-considered the medical source evidence.

At the time Plaintiff's claim was filed, the Social Security regulations separated medical evidence into two categories: (1) "acceptable medical sources," which includes licensed physicians and licensed or certified psychologists; and (2) "other sources," which includes nurse practitioners, physician's assistants,

therapists, and counselors.  20 C.F.R. 416.913(a), (d) (amended March 27, 2017).

*Leon v. Berryhill*, 2017 WL 7051119, *3 (9th Cir. Nov. 7, 2017) (noting that prior

to March 27, 2017, opinions of "other sources," such as nurse practitioners were

not given the same weight as a physician's opinions).

Opinions of "acceptable medical sources," i.e. treating physicians, may only

be rejected under certain circumstances.  *Lester v. Chater*, 81 F.3d 821, 830 (9th

Cir. 1995)).  To discount an uncontradicted opinion of a treating physician, the ALJ

must provide "clear and convincing reasons."  *Id.*  To discount the controverted

opinion of a treating physician, the ALJ must provide "'specific and legitimate

reasons' supported by substantial evidence in the record."  *Molina*, 674 F.3d at

1111; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  The same standards

apply to the ALJ's evaluation of an examining physician's opinion.  *Lester*, 81

F.3d at 831 n.8; *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

Opinions of "other sources," are not entitled to the same deference.  *Molina*,

674 F.3d at 1111.  The ALJ may discount opinions from "other sources" if the ALJ

gives "germane reasons" for doing so.  *Id.*

/ / /

/ / /

16

a.     *Dr. Dale Peterson*

Plaintiff saw Dr. Peterson twice for consultative physical examinations. (A.R. 465-72.)  At the first examination, Dr. Peterson noted Plaintiff got up and stretched throughout the interview and seemed to have pain in her lower back. (A.R. 467.)  He indicated there was no clear-cut weakness in Plaintiff's lower extremities, no atrophy in her upper extremities and no weakness of the small muscles of the hands.  (*Id.*)  He stated x-rays were not needed.  (*Id.*)

At the second examination, Dr. Peterson found there was no change in Plaintiff's condition, other than she felt her back pain was worse.  (A.R. 471.)  Dr. Peterson stated Plaintiff limped and exhibited a lot of pain behavior.  (*Id.*)  He indicated there were no clear-cut focal neurologic findings and some variation in the mechanical findings.  (*Id.*)  Dr. Peterson noted that when Plaintiff left the department, she walked much more comfortably than she did in the office.   (A.R. 471-72.)  He opined that he believed Plaintiff had muscular pain in her back, but would need further workup to confirm whether it was related to arthritis or a lumbar canal problem.  (A.R. 472.)

Previously, the ALJ discussed Dr. Peterson's evaluations, but erred by failing to state what weight, if any, she assigned to them.  (A.R. 729-30.)  On

17

remand, the ALJ clarified she afforded Dr. Peterson's opinions "little weight."

(A.R. 549.)  The ALJ explained Dr. Peterson's opinions were vague and lacked

detail regarding the severity and limited effects of Plaintiff's symptoms.  (*Id.*)  The

ALJ noted Dr. Peterson did not offer an opinion regarding Plaintiff's prognosis,

what she could still do despite her impairments, or her physical or mental

restrictions.  (*Id.*)

The Court finds the ALJ corrected the prior error on remand by explaining

the weight given to Dr. Peterson's opinion.  Further, the ALJ gave sufficiently

clear and convincing reasons for affording lesser weight to Dr. Peterson's opinion,

that are supported in the record.  As the ALJ noted, Dr. Peterson did not offer any

opinion regarding Plaintiff's specific diagnosis or prognosis, and he did not offer

an assessment of the claimant's functional capacity limitations.  Under the

regulations "[m]edical opinions are statements from acceptable medical sources

that reflect judgments about the nature and severity of [the claimant's]

impairment(s), including [their] symptoms, diagnosis and prognosis, what [they]

can still do despite impairment(s), and [their] physical or mental restrictions."  20

C.F.R. § 416.927(a)(1); 20 C.F.R. § 404.1527(a)(1).  Because Dr. Peterson did not

offer opinions regarding Plaintiff's diagnosis, prognosis, or physical or mental

limitations, his report does not contain medical opinions the ALJ must weigh.[1]  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").

Accordingly, the Court finds the ALJ did not err in considering Dr. Peterson's opinion.

b.   *Gloria Weiss, LCPC*

Plaintiff saw Gloria Weiss, a licensed clinical professional counselor from July 18, 2011 through December 7, 2011.  (A.R. 474-86.)  Ms. Weiss indicated Plaintiff suffered from major depressive disorder, and had a history of suicidal ideation with a plan, and homicidal ideation towards her husband.  (A.R. 474.)

---

[1]  As noted above, Dr. Peterson did make certain statements in his report regarding Plaintiff's "pain behavior"; that she had "no clear cut focal neurological findings" and "some variation in the mechanical findings"; and that she walked a lot more comfortably leaving the department than she did while in the office.  (A.R. 471-72.)  It was unclear from the ALJ's initial decision whether, and to what extent, the ALJ considered these findings in her decision.  The ALJ corrected this omission on remand by clarifying that she assigned little weight to Dr. Peterson's "vague opinions."  (A.R. at 549.)

Ms. Weiss indicated, however, that Plaintiff's depression did not make her unable to work, to live independently, or put her at risk of homelessness.  (A.R. 475.)

The Court previously found the ALJ mischaracterized Ms. Weiss's opinion. (A.R. 730.)  On remand, the ALJ corrected the error by accurately stating Ms. Weiss "opined that the claimant was not unable to live or work independently and was not at risk of homelessness due to her mental impairments."  (A.R. 549-50.) The ALJ indicated Ms. Wiess's general opinion was somewhat consistent with Plaintiff's reports regarding her activities of daily living and mental health symptoms.  (A.R. 550.)  Nevertheless, the ALJ stated she afforded Ms. Weiss's opinion "little weight."  (A.R. 549.)  The ALJ explained Ms. Weiss's opinion was based only on an initial assessment and without consideration of other treatment records or clinical observations conducted by acceptable medical sources.  (*Id.*) The Court finds the ALJ gave sufficiently germane reasons for her assessment of Ms. Weiss's opinion.  *Molina v. Astrue*. 674 F.3d 1104, 1111 (9th Cir. 2012).

Therefore, the ALJ did not err in considering Ms. Weiss's opinion.

   c. *Dr. Tristan Sophia*

Plaintiff was evaluated by Dr. Tristan Sophia for a consultative psychological evaluation in October 2013.  (A.R. 460-63.)  The Court previously

found no reversible error with regard to the ALJ's consideration of Dr Sophia's opinion.  (A.R. 731-32.)

"The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).  In *Stacy*, the Ninth Circuit expressly held the law of the case doctrine applies in the social security context.  *Id.*  Thus, the law of the case doctrine precludes the re-litigation of issues that were settled by the district court's prior remand order, unless (1) the evidence on remand is substantially different, (2) the controlling law has changed, or (3) if applying the doctrine would be unjust.  *Id.*

District courts in the Ninth Circuit have historically declined to reconsider issues that were decided by a prior remand order.  *See e.g. Pearson v. Chater*, 1997 WL 314380, *3 (N.D. Cal. Feb. 20, 1997) ("Under the law of the case doctrine, this court will not re-examine its legal decision that the ALJ had sufficient reasons to discount Dr. Newkirk's testimony."); *Neuvirth v. Astrue*, 2011 WL 2470676, *5 (E.D. Wash. June 20, 2011) (finding it would be error for the court to reconsider whether the ALJ properly discounted a medical source's opinion where the district

court's prior remand order expressly affirmed the ALJ's reason for rejecting the opinion).

Here, the Court previously determined the ALJ gave sufficiently specific and legitimate reasons for affording less weight to Dr. Sophia's opinion.  (A.R. 731-32.)  The Court finds none of the three exceptions to the law of the case doctrine are applicable with respect to this issue.  Accordingly, the Court declines to re-examine its prior determination that the ALJ did not err with regard to Dr. Sophia.

But even assuming the law of the case doctrine does not apply, the Court finds no error.  On remand, the ALJ gave nearly identical reasons for affording Dr. Sophia's opinion only "some weight."  (*Compare* A.R. 25 *with* A.R. 548-49.)  The ALJ explained she gave the opinion only limited weight because it lacked specificity and did not quantify Plaintiff's limitations.  (*Id.*)  The Court previously found these were specific and legitimate reasons for affording the opinion less weight, and does so again.  (A.R. 732.)  In addition, the ALJ explained Dr. Sophia's opinion was mostly based on Plaintiff's subjective representations, which the ALJ determined were not entirely credible.  (A.R. 549.)  As discussed above, the Court has found the ALJ did not err in assessing Plaintiff's credibility on

22

remand.  Accordingly, the ALJ's reasons for discounting Dr. Sophia's opinion are adequately supported by substantial evidence in the record.

### C.    Consideration of Depression as an Impairment

Plaintiff next argues the ALJ failed to incorporate the limitations of depression as an impairment in the RFC.  The Commissioner did not respond to Plaintiff's argument.

Previously, the Court held the ALJ's finding that Plaintiff's depression was non-severe at step two was supported by substantial evidence.  (A.R. 736.)  The Court found the ALJ erred, however, because she failed to consider Plaintiff's depression in combination with her other severe impairments in the RFC, or to explain why she excluded them.  (A.R. 738.)

On remand, the ALJ clarified that Plaintiff's non-severe impairments did not result in any additional sustained physical or mental limitations on a regular and continuing basis beyond the limitations set forth in the RFC.  (A.R. 539.)  In addition, the ALJ addressed Plaintiff's mental limitations in the RFC.  (*Id.*) Specifically, the ALJ determined Plaintiff was able to understand, remember, and carry out simple, detailed and complex tasks, could maintain attention, concentration, persistence and during an 8-hour-work day and 40-hour workweek,

23

and could tolerate interactions with supervisors, coworkers and the public.  (*Id.*)

The ALJ further noted Plaintiff could tolerate usual work situations and changes in

routine work settings.  (*Id.*)

Accordingly, the Court finds the ALJ adequately considered Plaintiff's

mental impairments in the RFC.

### D.     The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.

Finally, Plaintiff argues the ALJ failed to incorporate all severe impairments,

including mental limitations and depression, into the hypothetical questions posed

to the vocational expert.  The Commissioner did not address Plaintiff's argument.

Hypothetical questions posed to the vocational expert must set out all the

limitations and restrictions of the particular claimant.  *Embrey v. Bowen*, 849 F.2d

418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only

to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747,

756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the

assumptions in the hypothetical are not supported by the record, then the

vocational expert's opinion that the claimant has a residual working capacity has

no evidentiary value.  *Embrey*, 849 F.2d at 422

As discussed above, the Court has determined the ALJ adequately supported her reasons for discounting Plaintiff's testimony and the medical source evidence. Accordingly, the hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found credible and supported by evidence in the record.

Therefore, the Court finds the ALJ's determination at step five is supported by substantial evidence.

## V.   CONCLUSION

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's decision denying DIB and SSI is **AFFIRMED**, and Plaintiff's motion for summary judgment (Doc. 11) is **DENIED**

**IT IS ORDERED**.

DATED this 7th day of October, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge